UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON ELECTION INTEGRITY COALITION UNITED et al., <br><br> Plaintiffs, <br> v. <br><br> JULIE WISE et al., <br><br> Defendants. | CASE NO. 2:21-cv-01394-LK <br><br> ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE |

This matter comes before the Court on Washington Election Integrity Coalition United's ("WEICU's") motion to remand and a motion to dismiss filed by King County and Director of King County Elections Julie Wise ("Defendants"). Dkt. Nos. 12, 17. Because the individual Plaintiffs lack Article III standing and the Court has no supplemental jurisdiction over the remaining state law claims, and because remand to state court is not certain to be futile, the Court remands the case. However, the Court retains jurisdiction over Defendants' motion for sanctions, and denies it. Dkt. No. 26.

# I. BACKGROUND

This action is one of several nearly identical actions originally filed in state court by WEICU and numerous pro se plaintiffs in counties across Washington, and one of six such actions that have been removed to this Court.[1] Plaintiffs filed their complaint in King County Superior Court on September 22, 2021. Dkt. No. 1 at 1–2. Their claims center on the conduct of the November 2020 general election in King County, Washington.

The individual Plaintiffs[2] bring claims against the Director of King County Elections ("Director") for (1) using an uncertified voting system; (2) allowing or facilitating fraudulent alterations of the voting results (which Plaintiffs describe as "vote flipping, additions, and/or deletions"); (3) maintaining records of County elector party preference and identifying County electors' ballots by party preference; (4) allowing or facilitating "loosely connected zip ties on ballot collection and/or storage boxes," thereby preventing a secure chain of custody and allowing for the insertion or removal of ballots; and (5) violating the United States Constitution and the Washington State Constitution. Dkt. No. 1-1 at 5–12, 14–17. For each of these alleged "wrongful acts," the individual Plaintiffs seek declaratory and injunctive relief. *Id.* They also seek damages against the Director for civil rights violations under 42 U.S.C. §§ 1983 and 1988. *Id.* at 17–18. WEICU's sole claim is against the Director and King County under Washington's Public Records Act ("PRA"), Wash. Rev. Code §§ 42.56.001–42.56.900, for wrongfully denying WEICU's records request for "original ballots, ballot images, spoiled ballots, adjudication records, ballot

---

[1] The five other removed actions are *Washington Election Integrity Coalition United v. Fell*, No. C21-1354-LK; *Washington Election Integrity Coalition United v. Kimsey*, No. C21-5746-LK; *Washington Election Integrity Coalition United v. Anderson*, No. C21-5726-LK; *Washington Election Integrity Coalition United v. Bradrick*, No. C21-1386-LK; and *Washington Election Integrity Coalition United v. Hall*, No. C21-5787-LK.

[2] The individual Plaintiffs are Doug Basler, Howard Ferguson, Diana Bass, Timofey Samoylenko, Mary Hallowell, Samantha Bucari, Ronald Stewart, Lydia Zibin, and Catherine Dodson. Dkt. No. 1-1 at 20–22. Plaintiff Amy Behope's claims were dismissed pursuant to a stipulation between Behope and Defendants. Dkt. No. 24.

1   envelopes, and returned ballots for the Election." Dkt. No. 1-1 at 12. WEICU seeks to "compel

2   Defendants to provide access to public records from the Election for a full forensic audit." *Id.*

3         Defendants removed the case to this Court on October 13, 2021. Dkt. No. 1. On October

4   20, 2021, Defendants answered the complaint, Dkt. No. 10, and filed counterclaims seeking

5   declaratory relief stating that ballots, ballot images, and ballot envelopes containing voter

6   signatures are exempt from disclosure under the PRA, and injunctive relief precluding WEICU

7   from obtaining ballots, ballot images, or ballot envelopes containing voter signatures under the

8   PRA. *Id.* at 18–19. Defendants amended their answer and counterclaims on November 8, 2021.

9   Dkt. No. 21.

10        On October 22, 2021, WEICU filed a motion to remand. Dkt. No. 12. On November 4,

11  2021, Defendants moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(c).

12  Dkt. No. 17.

## II.   DISCUSSION

14        Oddly, Defendants removed this action on the basis that this Court has original jurisdiction

15  over it under 28 U.S.C. § 1331, Dkt. No. 1 at 2, and then sought to dismiss the action on the basis

16  that the individual Plaintiffs lack Article III standing to bring their claims, Dkt. No. 17 at 9–11. As

17  Defendants acknowledged, the only other Plaintiff at that time was WEICU, which purported to

18  assert only a state law claim. Dkt. No. 1-1 at 12–14; Dkt. No. 17 at 20.

19        28 U.S.C. § 1441 allows a defendant to remove an action filed in state court to federal

20  district court where the federal district court has original jurisdiction. The Ninth Circuit "strictly

21  construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be

22  rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*,

23  980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means

24  that the defendant always has the burden of establishing that removal is proper." *Id.* Ultimately, if

a district court lacks subject matter jurisdiction over a removed action, it usually has the duty to remand it, for "removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment[.]" *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 43 (1998); *see* 28 U.S.C. § 1441(a).

### A. Because the Individual Plaintiffs Do Not Have Article III Standing, this Court Lacks Subject Matter Jurisdiction over Their Claims

At the outset, the Court recognizes that the right at issue in this case—the right to vote and have that vote counted—is "a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). But a voter seeking relief in federal court for alleged violations of constitutional rights must have standing to do so, including "a personal stake in the outcome, distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (cleaned up). "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III's "case or controversy" requirement thus obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

As the party invoking federal jurisdiction, Defendants bear the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting

*Lujan*, 504 U.S. at 560 n.1). The injury must also be "concrete"; "that is, it must actually exist." *Id.* at 339–40. Because Defendants themselves argue that the individual Plaintiffs lack Article III standing, Dkt. No. 17 at 9–11, they have failed to meet their burden to establish that the Court has subject matter jurisdiction over these claims, *see Britton v. Cnty. of Santa Cruz*, No. 19-CV-04263-LHK, 2020 WL 4197609, at *4 (N.D. Cal. July 22, 2020).

Defendants urge the Court to dismiss Plaintiffs' claims because they raise only generalized grievances and do not identify any particularized individual injury. Dkt. No. 17 at 9–11. These challenges are evaluated under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The inquiry is confined to the allegations in the complaint, and the court assumes all materials allegations in the complaint are true. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya*, 658 F.3d at 1068 (internal footnotes omitted) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689–90 (1973)).

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance*, 549 U.S. at 439 (quoting *Lujan*, 504 U.S. at 573–74 (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he Court has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, and in recognition "that a person's right to vote is 'individual and personal in nature,'" courts have long held that "'voters

who allege facts showing *disadvantage to themselves as individuals* have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (emphasis added) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr,* 369 U.S. 186, 206 (1962)). As Defendants contend, Plaintiffs fail to show such disadvantage and therefore lack Article III standing.

       1.    <u>Plaintiffs Do Not Allege that They Suffered Any "Concrete, Particularized, and Actual or Imminent" Injury from the Alleged Misconduct by the Director</u>

Plaintiffs' claims each follow a similar pattern: they allege a violation of law, ask the Court to declare the Director's duties under the law and enjoin her from violating the law, and then state that they "will suffer irreparable injury" from violations of their constitutional rights:

| **Allegation** | **Requested Declaration/Injunction** | **"Injury"** |
|---|---|---|
| Plaintiffs "are informed and believe" that the Director used an uncertified voting system. Dkt. No. 1-1 at 5. | Declare "Plaintiffs' rights and the duties of Director as they pertain to the Uncertified Voting System" used in the 2020 election and in future elections, and restrain the Director from using any uncertified voting system. *Id.* at 6–7. | "Plaintiffs will suffer irreparable injury in that their fundamental rights under the Washington State Constitution and/or United States Constitution . . . will be further violated." *Id.* at 6–7. |
| Plaintiffs "are informed and believe" that the Director "allow[ed] and/or facilitate[ed] electronic manipulation of the voting results from the [2020] Election," and that "a portion of the state-wide vote flipping, additions and/or deletions occurred in the County's [2020] Election overseen by Director." *Id.* at 7–8. | Declare "Plaintiffs' rights and the duties of Director with regard to the alleged vote flipping, additions and/or deletions before, during and/or after the [2020] Election," and restrain the Director from "allowing and/or facilitating electronic manipulation of the voting results for any election held in the County." *Id.* at 8. | Same as above. *See id.* |
| Plaintiffs "are informed and believe" that the Director allowed or facilitated (1) maintenance of a record of County voters' party preference and (2) identification of County voters' ballots cast in the 2020 election by party preference. *Id.* at 9. | Declare the "Plaintiffs' rights and the duties of Director with regard to the alleged party preference conduct," and restrain the Director from "allowing and/or facilitating party preference tracking and/or ballot identification." *Id.* at 10. | Same as above. *See id.* at 10. |

| Allegation | Requested Declaration/Injunction | "Injury" |
|---|---|---|
| Plaintiffs "are informed and believe" that Director allowed and/or facilitated "loosely connected zip ties on ballot collection and/or storage boxes preventing a secure chain of custody and allowing, *inter alia*, space for insertion and/or removal of original ballots." *Id.* at 11. | Declare "Plaintiffs' rights and the duties of Director with regard to the above alleged wrongful acts" and restrain Director from "allowing and/or facilitating loosely connected zip ties on ballot collection and/or storage boxes preventing a secure chain of custody and allowing, *inter alia*, space for insertion and/or removal of original ballots." *Id.* at 11. | Same as above. *See id.* at 12. |
| Director's conduct violated the United States Constitution, including the Fourteenth Amendment. *Id.* at 14–16. | Declare "Plaintiffs' rights and the duties of Director, as they pertain to the [2020] Election and future elections in the County," and restrain the Director from using an uncertified voting system, allowing or facilitating vote flipping, additions and/or deletions, allowing or facilitating party preference tracking and/or ballot identification, and/or allowing or facilitating "loosely connected zip ties on ballot collection and/or storage boxes." *Id.* at 16–17. | Same as above, *id.* at 16, and: "Because Director failed to follow state and federal law," County voters "were denied their fundamental right of suffrage without due process of law" and "had the value of their votes diluted, and the will of said voters denied, without due process of law," and County voters' ballots "were not treaty equally nor given equal levels of protection under the law." *Id.* at 15–16. |

In none of these allegations do Plaintiffs claim that they suffered any "concrete, particularized, and actual or imminent" injury from the Director's alleged misconduct. Although Plaintiffs do not explain their theory of vote dilution, it appears to be based on general allegations of election irregularities that affected the votes of all "qualified electors" in the County. *See* Dkt. No. 1-1 at 15 (because "Director failed to follow state and federal law," "[q]ualified electors who voted similarly had the value of their votes diluted"). "As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020). *See also Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 609 (E.D. Wis. Dec. 9, 2020) (plaintiff lacked standing where his "alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were . . . so riddled with fraud, illegality, and statistical impossibility" that its results could not be certified); *Martel v. Condos*, 487 F. Supp. 3d 247, 253

(D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650011, at *7 (W.D. Tex. Feb. 23, 2015) (speculative complaints of "potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law."). While Plaintiffs speculate that the Director tracked or identified ballots by "party preference," Dkt. No. 1-1 at 9, they do not suggest that any votes were weighed differently, including their own. Thus, although allegations of vote dilution may create standing in some circumstances, they do not do so here.

Similarly, Plaintiffs never assert that they were personally harmed by any of Defendants' alleged conduct with respect to the use of an uncertified voting system, the manipulation of voting results, the tracking of party preference, or the use of zip ties on ballot collection and storage boxes. *See generally* Dkt. No. 1-1. Even to the extent that their allegations regarding the use of zip ties, construed charitably, can be interpreted as asserting an injury personal to Plaintiffs, any such injury is too uncertain and speculative to confer Article III standing. Plaintiffs assert that the use of "loosely connected zip ties on ballot collection and/or storage boxes prevent[ed] a secure chain of custody and allow[ed], *inter alia*, space for insertion and/or removal of original ballots." Dkt. No. 1-1 at 11. But the claim that the use of loosely connected zip ties "allowed space for" the improper insertion or removal of ballots is merely speculation about possible injury that is insufficient to establish an injury-in-fact for purposes of Article III standing. *See Clapper*, 568 U.S. at 409 (a threatened injury must be "certainly impending" to constitute injury in fact).

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 8

To the extent Plaintiffs argue more broadly that they maintain an interest in government officials conducting an election in conformity with the Constitution, "they merely assert a 'generalized grievance' stemming from an attempt to have the Government act in accordance with their view of the law." *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021). *See also Lujan*, 504 U.S. at 576 ("the public interest in proper administration of the laws" is insufficient to create Article III standing, regardless of "the source of the asserted right"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) ("An injury to the right 'to require that the government be administered according to the law' is a generalized grievance." (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989))), *cert. denied*, 141 S. Ct. 1379 (2021); *Ickes v. Whitmer*, No. 1:22-CV-817, 2022 WL 4103030, at *3 (W.D. Mich. Sept. 8, 2022) (finding that "Plaintiffs likely do not have standing to raise [their] concern about [allegedly uncertified] machines used in the November 2022 election or the possible destruction of records" because they "have only a generalized grievance that would be common among all people who cast a vote in the November 2022 election and not a particularized, individual injury").

Plaintiffs also lack standing to assert their claims under 42 U.S.C. §§ 1983 and 1988 because those claims are derivative of their other claims, which the Court has already found they lack standing to assert. Sections 1983 and 1988 do not create standing where it is otherwise lacking. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) ("One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002))); 42 U.S.C. § 1988 (granting discretion to accord attorney's fees to the "prevailing party" in a suit under § 1983).[3]

---

[3] The Court does not consider Defendants' argument that individual Plaintiffs have conceded that the motion to dismiss has merit because they failed to file any opposition, Dkt. No. 31 at 4, because the Court has already found that it lacks subject matter jurisdiction to hear the individual Plaintiffs' claims. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping*

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 9

WEICU opposes Defendants' motion to dismiss the individual Plaintiffs' claims, but its opposition fails to demonstrate that it or any of the individual Plaintiffs have standing. Although the opposition brief argues that Defendants improperly removed the case to federal court, Dkt. No. 29 at 2, it does not address the standing issue at all. *See generally id.*; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court.").

Because Plaintiffs have asserted only generalized grievances, the Court finds that Plaintiffs lack Article III standing to assert their federal claims.

2. The Court Lacks Supplemental Jurisdiction over Plaintiffs' State Law Claims and Defendants' Counterclaims

WEICU and Defendants dispute whether the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims. Dkt. No. 25 at 4–5; Dkt. No. 28 at 5.

Under 28 U.S.C. § 1367(a), a district court "shall have" supplemental jurisdiction over claims that form part of the "same case or controversy" as claims within the court's original jurisdiction. However, "if the court dismisses [all federal claims] for lack of subject matter jurisdiction, it has no discretion" under Section 1367 to adjudicate the plaintiff's state-law claims "and must dismiss all claims." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("[W]ith the dismissal of [plaintiff's] federal constitutional claim for lack of standing, we have no authority to retain jurisdiction over [his] state law claims.").

Because the Court does not have subject matter jurisdiction over Plaintiffs' federal claims due to their lack of Article III standing, it has no discretion under 28 U.S.C. § 1367(c) to adjudicate

---

*Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (cleaned up)).

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 10

the remaining state law claims, including Defendants' counterclaims. Dkt. No. 21 at 13–19.

Without subject matter jurisdiction, the Court is left to either dismiss or remand the claims in this case. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196–98 (9th Cir. 2016).

**B.     The Case Is Remanded Because It Is Not Certain that Remand of Defendants' Counterclaims Would Be Futile**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over a case that has been removed from state court, "the case shall be remanded." 28 U.S.C. § 1447(c); *see also Polo*, 833 F.3d at 1196 (a district court lacking subject matter jurisdiction "generally *must* remand the case to state court, rather than dismiss it" (emphasis in original)). Usually, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (emphasis in original). However, the Ninth Circuit has held that a district court may dismiss a case rather than remand it to state court where it is "certain that a remand to state court would be futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991).[4] Here, it is not certain that remand of Defendants' counterclaims would be futile.

Defendants assert two counterclaims. First, they seek declaratory relief under Section 42.56.070 of the Revised Code of Washington clarifying their obligations under the PRA; specifically, that "ballots, ballot images and voter signatures on ballot envelopes are exempt from public disclosure under the Public Records Act[.]" Dkt. No. 21 at 13, 18. Second, Defendants seek

---

[4] There is some doubt about the continued vitality of the futility exception. *See Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016) ("[i]n the wake of *International Primate*, a number of other circuits have expressly rejected the futility doctrine," and it "may no longer be good law."). However, the Ninth Circuit has upheld application of the futility exception in several cases since *Bell*. *See, e.g.*, *Strojnik v. Driftwood Hosp. Mgmt., LLC*, No. 21-16060, 2022 WL 1642234, at *1 (9th Cir. May 24, 2022); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022); *Marshall v. Motel 6 Operating LP*, 825 F. App'x 527, 528 (9th Cir. 2020); *Rodriguez v. U.S. Healthworks, Inc.*, 813 F. App'x 315, 316 (9th Cir. 2020).

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 11

a permanent injunction under Section 42.56.540 of the Revised Code of Washington "precluding WEICU from obtaining ballots, ballot images and voter signatures on ballot envelopes." *Id.* at 19.

Defendants' interpretation of the PRA appears to have merit. Under the PRA, "[a]n agency may lawfully withhold production of records if a specific exemption applies." *White v. Clark Cnty.* (*White I*), 401 P.3d 375, 378 (Wash. Ct. App. 2017). "There are three sources of PRA exemptions: (1) enumerated exemptions contained in the PRA itself, (2) any other statute that exempts or prohibits disclosure, and (3) the Washington Constitution." *Id.* (cleaned up). The "other statute" exemption is found in Section 42.56.070(1) of the Revised Code of Washington: "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." Washington courts have squarely held that both Section 29A.60.110 of the Revised Code of Washington and Section 434-261-045 of the Washington Administrative Code create a statutory exemption for ballots and ballot images under the "other statute" exemption. *White I*, 401 P.3d at 378–80.

Section 434-261-045 of the Washington Administrative Code "unambiguously requires that ballots be kept in secure storage at all times other than during processing, duplication, inspection, and tabulation and states that they can *only* be accessed in accordance with RCW 29A.60.110 and 29A.60.125." *White I*, 401 P.3d at 379–80 (emphasis in original). And Section 29A.60.110 of the Revised Code of Washington "unambiguously requires that tabulated ballots be kept in sealed containers and can be opened by the canvassing board *only* in . . . specified situations": (1) as part of the canvass, (2) to conduct recounts, (3) to conduct a random check under RCW 29A.60.170, (4) to conduct an audit under RCW 29A.60.185, or (5) by order of the superior court in a contest or election dispute. *White I*, 401 P.3d at 379 (emphasis in original); *see also* Wash. Rev. Code § 29A.60.110(2). None of these situations appears to apply here. Furthermore,

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 12

Section 29A.68.013 of the Revised Code of Washington sets a strict ten-day time limit for election contests, and that time limit has long passed with respect to the 2020 election. All of the records that are the subject of Defendants' counterclaims—"ballots, ballot images and voter signatures on ballot envelopes," Dkt. No. 21 at 19—thus appear to fall under the "other statute" exemption.

Because the failure of Defendants' counterclaims is not "so clear as to be foreordained," *Polo*, 833 F.3d at 1198, the Court must remand them to state court along with the rest of the case. *See Platt v. Moore*, 15 F.4th 895, 909 (9th Cir. 2021) ("Section 1447(c) requires remand of the entire 'case' when jurisdiction is lacking[.]"). And because the Court has determined that remand of Defendants' counterclaims is not certain to be futile, it need not address the futility of remanding the remaining claims in the case.

C. **Defendants' Motion for Sanctions**

Despite its lack of subject matter jurisdiction over the claims in this case, the Court retains jurisdiction over Defendants' motion for sanctions, Dkt. No. 26, under Federal Rule of Civil Procedure 11. *See Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992); *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003). Defendants ask this Court to impose sanctions on Plaintiffs under Rule 11 because Plaintiffs failed to make an adequate factual inquiry into their claims and because "[t]hey filed their claims despite substantial authority that they lack standing." Dkt. No. 26 at 7–11. Because the Court is disposing of this case based on Article III standing grounds only and otherwise makes no findings as to Plaintiffs' claims or their standing in state court due to its lack of subject matter jurisdiction, the Court declines to impose sanctions.

IV.    **CONCLUSION**

For the reasons stated above, the Court GRANTS WEICU's motion to remand, Dkt. No. 12, DENIES Defendants' motion to dismiss Plaintiffs' claims, Dkt. No. 17, and DENIES

Defendants' motion for sanctions, Dkt. No. 26. The Washington State Democratic Central Committee's Motion to Intervene, Dkt. No. 14, is DENIED as moot. The Court accordingly ORDERS that:

1. Pursuant to 28 U.S.C. § 1367(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2. Pursuant to 28 U.S.C. § 1447(c), the Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County Washington;

3. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

4. The Clerk of the Court shall CLOSE this case.

Dated this 30th day of September, 2022.

Lauren King
United States District Judge

ORDER GRANTING MOTION TO REMAND, DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION TO INTERVENE - 14